**Erik H. MADSEN, Plaintiff and Respondent,**

v.

**MURREY & SONS COMPANY, INC., Defendant and Appellant.**

**No. 19977.**

Supreme Court of Utah.

Sept. 29, 1987.

John Paul Kennedy, Scott C. Pugsley, Salt Lake City, for plaintiff and respondent.

Robert B. Hansen, Salt Lake City, for defendant and appellant.

HOWE, Justice:

Appellant Murrey & Sons Company, Inc. (seller), seeks reversal of the trial court's judgment ordering it to return $21,250 to respondent Erik H. Madsen (buyer) in partial restitution of $42,500 paid by him on a contract between the parties which the buyer subsequently breached. Utah Code Ann. § 70A-2-718(2), (3) (1980).

Seller is a corporation located in Los Angeles, California, and engaged in the business of manufacturing and selling pool tables. In early 1978, buyer, a resident of Salt Lake City, Utah, was working on an idea to develop a pool table which, through the use of electronic devices installed in the rails of the table, would produce lighting and sound effects in a fashion similar to a pinball machine. Buyer was experimenting with his idea on a used pool table in his home. This table had been modified to consist of ten pockets, rather than six as originally constructed, and buyer was attempting to design the electronics to be used in the table.

In late February 1978, Patrick W. Murrey, the general manager for seller, travelled to Salt Lake City to learn about buyer's idea, observe the pool table buyer had developed, determine the feasibility of constructing such a table, and discuss the possibility of manufacturing a large quantity of the unique tables for buyer. While in Salt Lake City, and through subsequent communications between the parties by means of telephone and mail, Mr. Murrey recommended that buyer abandon the idea of using a customized ten-pocket pool table and encouraged him to use seller's standard 4' × 8' six-pocket coin-operated pool table, with a customized rail. Buyer agreed.

Shortly thereafter, buyer and seller entered into a written agreement by means of a sales order signed by both parties. Seller agreed to manufacture 100 of its M1 4' × 8' six-pocket coin-operated pool tables, with customized rails capable of incorporating

the electronic lighting and sound effects desired by buyer. Under the agreement, buyer was to design the rails and provide the drawings to seller, who would manufacture them according to buyer's specifications. Buyer was also to design, supply, and install all of the electronic components for the tables. Buyer agreed to pay seller $550 per pool table, or a total of $55,000 for the 100 tables.

On March 13, 1978, buyer paid $5,550 to seller, $550 of which went toward the purchase of a separately ordered and delivered pool table to be used as a prototype, leaving $5,000 as an advance on the purchase price for the 100 pool tables. In May and June 1978, buyer advanced another $25,000 and $12,500, respectively, totalling $42,500 in advance payments. During this time, seller commenced the manufacturing of the pool tables and buyer continued his efforts to develop a satisfactory design for the electronics and the customized rails. However, he encountered numerous problems with both. By the fall of 1978, the designs remained undeveloped, and buyer advised seller that he would be unable to take delivery of the 100 pool tables. Buyer then brought this action for restitution of the $42,500 he had paid.

Following buyer's repudiation of the contract, seller dismantled the pool tables and used the salvageable materials to manufacture other pool tables. A good portion of the material was simply used as firewood. As admitted by Patrick Murrey, seller did not attempt or make any effort to market or sell the 100 pool tables at a discount price or at any other price in order to mitigate or minimize its damages.

The trial court, sitting without a jury, found that buyer did not complete the design for the customized rails or the designs for the electronic components. Seller had already manufactured the 100 pool tables to the extent that it could do so and, the court found, "fully performed all of its obligations under the agreement." The court also found that had seller completed the tables, they would have had a value of at least $21,250 and could have been sold by seller for at least that amount following the repudiation of the contract. In turn, the court concluded that seller's action in dismantling the tables for salvage and for firewood, rather than attempting to sell or market them at a full or discounted price, was not commercially reasonable. The court fixed seller's damages at $21,250 and held that seller did not prove that it had been damaged any greater. Apparently in reliance on Utah Code Ann. § 70A–2–718(2), (3), judgment was entered that buyer recover from seller the $42,500 paid, less the $21,250 damages suffered by . der as a result of the repudiation, for a net recovery of $21,250.

I.

■ Seller first contends that the trial court erred in concluding that it had failed to mitigate or minimize its damages in a commercially reasonable manner by not attempting to sell the 100 pool tables on the open market. It is a well-settled rule of the law of damages that "no party suffering a loss as the result of a breach of contract is entitled to any damages which could have been avoided if the aggrieved party had acted in a reasonably diligent manner in attempting to lessen his losses as a consequence of that breach." 3 *Williston on Sales* § 24–5, at 405 (4th ed. 1974). This doctrine is the mitigation of damages rule "that a party has the active duty of making reasonable exertions to render the injury as light as possible ... and that no recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures." *Fairfield Lease Corp. v. 717 Pharmacy, Inc.*, 109 Misc.2d 1072, 1077, 441 N.Y.S.2d 621, 624 (N.Y.City Civ.Ct.1981) (citations omitted). We have held:

> Where a contractual agreement has been breached by a party thereto, the aggrieved party is entitled to those damages that will put him in as good a position as he would have been had the other party performed pursuant to the agreement. A corollary to this rule is that the aggrieved party may not, either by action or inaction, aggravate the injury occasioned by the breach, but has a duty actively to mitigate his damages.

*Utah Farm Production Credit Association v. Cox*, 627 P.2d 62, 64 (Utah 1981) (citations omitted).

Seller asserts that it sufficiently mitigated its damages by dismantling the pool tables and salvaging various components that could be used to manufacture other pool tables. The salvage value to seller was claimed to be $7,448. It presented testimony that selling the tables as "seconds" would damage its reputation for quality and that the various holes, notches, and routings placed in the tables to accommodate the electrical components to be installed by buyer weakened the structure of the tables so as to submit seller to potential liability if they were sold on the market.

On the other hand, Ronald Baker, who had been involved with the manufacturing and marketing of pool tables for 25 years, testified on behalf of the buyer that the notches, holes, and routings made in the frame to accommodate electrical wiring would not adversely affect the quality or marketability of the 100 pool tables. According to Baker, the tables could have been sold at full value or at a discounted price. In addition to this testimony, the trial court had the opportunity to view the experimental table developed by buyer and his associates and observe the holes, notches, and routings necessary for the electrical components.

The trial court found that seller's action in dismantling the tables and using the materials for salvage and firewood, rather than attempting to sell or market the tables at full or a discounted price, was not commercially reasonable. The court then concluded that seller had a duty to mitigate its damages and failed to do so. The finding is supported by competent evidence. We find no clear error. Utah R.Civ.P. 52.

## II.

■ Seller next contends that the trial court erred in finding that the 100 pool tables, before being disassembled by seller, had a value of at least $21,250 and could have been sold by seller for at least that amount following the repudiation of the contract. Again, we do not retry the facts

and will sustain findings supported by evidence in the record unless clearly erroneous.

At trial, substantial evidence was presented concerning the value of the pool tables at the time of buyer's repudiation and refusal to accept delivery upon tender. This evidence varied from Mr. Murrey's testimony that the tables had no value because they were not marketable to Mr. Baker's testimony that the tables could have been sold for full value or a discounted value because the integrity and marketability of the tables were not impaired. Murrey partially disputed his own testimony by admitting that the tables could have been sold at a discount. The evidence presented a broad range from which the trial court could determine the value of the 100 pool tables. The trial court's finding that the tables had a value of at least $21,250 was within the range of the evidence presented at trial. We will not overturn that finding.

## III.

The trial court found that seller suffered damages as a result of buyer's repudiation of the agreement in the amount of $21,250 and that it did not prove that it had been damaged any greater. The court offset the amount of seller's damages against the amount buyer paid on the contract ($42,-500) and awarded buyer a judgment of $21,250. Seller contends that the trial court erred in assessing its damages at $21,250 by failing to consider loss of expected profit, together with any incidental damages and costs incurred. Utah Code Ann. § 70A–2–708(2) (1980).

Buyer's right to recover any amount of the $42,500 paid on the contract arises under section 70A–2–718(2), (3), which provides in pertinent part:

(2) Where the seller justifiably withholds a delivery of goods because of the buyer's breach, the buyer is entitled to restitution of any amount by which the sum of his payments exceeds

. . . .

(b) ... twenty per cent of the value of the total performance for which the buy-

er is obligated under the contract or $500, whichever is smaller.

(3) The buyer's right to restitution under subsection (2) is subject to offset to the extent that the seller establishes

(a) a right to recover damages under the provisions of this chapter ... and,

(b) the amount or value of any benefits received by the buyer directly or indirectly by reason of the contract.

As a result of buyer's breach, seller justifiably withheld delivery of the 100 pool tables. Still, buyer is entitled to recover the $42,500 paid on the contract less the damages suffered by seller. We recently held that "in fixing damages, the trial court is vested with broad discretion, and the award will not be set aside unless it is manifestly unjust or indicates that the trial court neglected pertinent elements, or was unduly influenced by prejudice or other extraneous circumstances." *Mabey v. Kay Petersen Construction Co.*, 682 P.2d 287, 291 (Utah 1984). Our review of the record reveals that the trial court neglected pertinent elements of Utah's commercial code in assessing seller's damages.

■ The applicable statute to be used in determining seller's damages for nonacceptance or repudiation is Utah Code Ann. § 70A-2-708 (1980), which provides:

(1) Subject to subsection (2) and to the provisions of this chapter with respect to proof of market price (section 70A-2-723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter (section 70A-2-710), but less expenses saved in consequence of the buyer's breach.

(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter (section 70A-2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Seller argues that section 70A-2-708(2) is the proper formula for assessing its damages. That, however, would be inconsistent with the general rule that requires application of section 70A-2-708(1) where the trial court finds that a reasonably accessible market exists wherein the aggrieved seller can market its goods. *See Detroit Power Screwdriver Co. v. Ladney*, 25 Mich.App. 478, 181 N.W.2d 828 (1970); *Anchorage Centennial Development Co. v. Van Wormer & Rodrigues, Inc.*, 443 P.2d 596, 599 (Alaska 1968). "By market, we mean a market which, if availed of, would have substantially mitigated [seller's] damages." *Timber Access Industries Co. v. U.S. Plywood-Champion Papers, Inc.*, 263 Or. 509, 525, 503 P.2d 482, 490 (1972). The trial court concluded that seller failed to perform its duty to mitigate its damages by not marketing or attempting to sell the pool tables on the open market. Having found that a market existed, seller's damages must be determined under section 70A-2-708(1).

■ Applying the trial court's finding that the pool tables if completed could have been sold for at least $21,250, seller's damages are the difference between the market price ($21,250) and the contract price ($55,000), or $33,750. The trial court found that seller was not entitled to any incidental damages. Buyer is not entitled to any further credit for expenses saved by seller in consequence of buyer's breach. Since the $21,250 which the trial court charged seller with was for completed tables, no savings would have occurred. Under section 70A-2-718(2), (3), buyer's right to restitution of advance payments on the contract ($42,500) is subject to offset to the extent that seller establishes damages ($33,750), for a total recovery of $8,750.

Buyer contends that seller failed to carry its burden of proving the amount of offset as required by section 70A-2-718(3). The findings and conclusions of the trial court, however, show otherwise. The agreement between the parties, as evidenced by the

signed sales order, was a valid and enforceable contract. As a result of buyer's repudiation, buyer breached the agreement. Seller fully performed all of its obligations under the agreement and was entitled to damages under section 70A–2–708(1).

### IV.

Seller next contends that the trial court erred in finding that buyer made advance payments on the contract totalling $42,500 instead of $41,950. We will not overturn this finding as it is supported by substantial evidence.

Buyer is entitled to recover from seller the sum of $8,750. The judgment is affirmed as modified.

HALL, C.J., STEWART, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.