1999 UT App 217

**PACIFIC DEVELOPMENT, L.C.,**
a limited liability company,
Plaintiff and Appellant,

v.

**Eric ORTON dba Orton Excavation,**
Defendant and Appellee.

No. 980148–CA.

Court of Appeals of Utah.

July 1, 1999.

Kim H. Buhler and Richard D. Bradford, Bradford, Brady & Johnson, Provo, for Appellant.

Scott L. Wiggins, Arnold & Wiggins, PC, Salt Lake City, for Appellee.

Before WILKINS, P.J., and GREENWOOD, Associate P.J., and BENCH, J.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 We have been asked to review the district court's decision affirming an arbitration award to defendant, Eric Orton dba Orton Excavation (Orton). We affirm.

¶ 2 The arbitration arose out of a contract dispute between Orton and plaintiff, Pacific Development, L.C. (Pacific). In 1994, Pacific, a real estate developer, subcontracted with Orton to perform sewer, water, and storm drain work in a subdivision Pacific was developing. As the arbitrator found, "The work was to be paid for according to various unit prices based upon actual quantities of work performed. Notably, the October 10, 1994 addendum stated 'Quantities subject to on-site measuring and delivery invoices and/or trucking slips, after installation.' "

¶ 3 Orton worked on Plat B and Plat C of the subdivision; however, a dispute arose over the amount Pacific owed to Orton for extra work Orton claimed to have performed on Plat B and Plat C. As a result, Orton recorded a mechanics' lien on the project and later sought to foreclose it. Pacific responded by filing a complaint in district court alleging wrongful lien, slander of title, and defamation of character. A flurry of counterclaims, third-party claims, and responses to counterclaims followed, after which both parties agreed to arbitrate the matter.

¶ 4 On June 9, 1997, Pacific and Orton executed a written Agreement to Arbitrate, which stated in part:

[Both parties] acknowledge that the issues relating to the above-referenced Plat B of Riderwood Village have been resolved, and that, therefore, the arbitration will focus on the remaining issues of the dispute, those which related to Plat C, thereby resolving all remaining issues in the case.... The parties agree that they will abide by the Award rendered by the arbitrator and that a judgment may be entered upon the Award in a court of competent jurisdiction.

The arbitration took place in late August and September 1997. Despite the arbitration agreement's language limiting the arbitration's scope to issues involving only Plat C, Pacific introduced evidence relating to Plat B. Orton followed suit by introducing its own Plat B evidence. On November 7, 1997, the arbitrator issued an Interim Arbitration Award, which addressed issues involving Plat B as well as Plat C. Pacific filed a Motion for Reconsideration, arguing the arbitrator exceeded his authority by addressing Plat B issues and manifestly disregarded the law. Orton filed an opposing motion.

¶ 5 The arbitrator issued a Final Arbitration Award on December 24, 1997. Pursuant

to the Utah Arbitration Act, Orton sought confirmation of the award in Fourth District Court. *See* Utah Code Ann. § 78–31a–12 (1996). Pacific responded by filing a Motion to Vacate or Modify the Arbitration Award. After a hearing, the court confirmed the final arbitration award. Pacific then filed this appeal.

## STANDARD OF REVIEW

¶ 6 We first note that few Utah cases address the issues before us. "Because Utah law on th[ese] issue[s] is sparse, and because the provisions of the Utah Arbitration Act are nearly identical to those contained in the Federal Arbitration Act, ... we look to the law of other states and to federal case law for guidance on these issues." *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 n. 5 (Utah 1996) (adopting federal courts' interpretations of Federal Arbitration Act as Utah law but reserving option to deviate from those interpretations).

¶ 7 Turning to the applicable standard of review, we recognize that " 'there is no *special* standard governing [an appellate court's] review of a district court's decision' to confirm, vacate, or modify an arbitration award." *Id.* at 948 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995)). "Thus, in reviewing the order of a trial court

confirming, vacating, or modifying an arbitration award, 'we grant no deference to the district court's conclusions [of law] but review them for correctness.' " *Id.* (quoting *DeVore v. IHC Hosps., Inc.,* 884 P.2d 1246, 1251 (Utah 1994); *see also First Options,* 514 U.S. at 948, 115 S.Ct. at 1926 ("[C]ourts of appeals should apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards."). Accordingly, our "scope of review is limited to the legal issue of whether the trial court correctly exercised its authority in confirming, vacating, or modifying an arbitration award." [1] *Intermountain Power v. Union Pac. R.R. Co.,* 961 P.2d 320, 323 (Utah 1998). "In deciding whether the arbitrator exceeded its authority, we resolve all doubts in favor of arbitration." *Executone Info. Sys., Inc. v. Davis,* 26 F.3d 1314, 1320 (5th Cir.1994) (citing *Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 213 (5th Cir.), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993)).

## ANALYSIS

¶ 8 Utah's Arbitration Act limits a trial court's review of an arbitration award to a narrow set of statutory grounds. *See* Utah Code Ann. § 78–31a–14(1) (1996 & Supp. 1998); [2] *Giannopulos v. Pappas,* 80 Utah 442, 449, 15 P.2d 353, 356 (1932). Under this rubric, the trial court must "give considera-

---

1. Orton asserts that Pacific has failed to challenge the trial court's decision and has incorrectly directed this court to review the merits of the arbitrator's decision. We agree. Although it is important to understand the issues surrounding the arbitrator's decision, we are strictly limited to reviewing the trial court's confirmation of the final arbitration award under the relevant statutes. Absent any findings of fact or legal conclusions by the trial court, however, we are left with only the arbitrator's award. Thus, we examine the final arbitration award to determine whether the arbitrator exceeded his jurisdiction, keeping in mind that we must uphold the award as long as it "draw[s] its essence from the contract" and does not "simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987). Even serious error by the arbitrator will not allow the trial court, or this court, to disturb the award. *See id.* at 37–38, 108 S.Ct. at 370 ("[I]t is the arbitrator's view of the facts and of the meaning of the contract [the parties] have agreed to ac-

cept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.").

2. Section 78–31a–14(1) of the Arbitration Act directs a trial court to vacate an arbitration award if it appears:

   (a) the award was procured by corruption, fraud, or other undue means;
   (b) an arbitrator, appointed as a neutral, showed partiality, or an arbitrator was guilty of misconduct that prejudiced the rights of any party;
   (c) the arbitrators exceeded their powers;
   (d) the arbitrators refused to postpone the hearing upon sufficient cause shown, refused to hear evidence material to the controversy, or otherwise conducted the hearing to the substantial prejudice of the rights of a party; or
   (e) there was no arbitration agreement between the parties to the arbitration proceeding.
   Utah Code Ann. § 78–31a–14(1).

ble discretion to the arbitrator," even when the trial court disagrees with the award or believes the arbitrator made a factual or legal error. *Intermountain Power*, 961 P.2d at 323; *see also Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996) (" '[T]he [trial] court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances.' " (Citation omitted.)).

¶ 9 In this case, Pacific argues vacation of the award was justified because the arbitrator exceeded the scope of his powers by addressing issues not included in the written arbitration agreement and by manifestly disregarding the law. *See* Utah Code Ann. § 78–31a–14(c) (1998). We address each argument in turn.

¶ 10 In Utah, an arbitration agreement both creates and defines the arbitrator's jurisdiction. *See Intermountain Power v. Union Pac. R.R. Co.*, 961 P.2d 320, 323 (Utah 1998); *see also Buzas Baseball*, 925 P.2d at 949 (citing *Western Elec. Co. v. Communications Workers of Am.*, 450 F.Supp. 876, 881 (E.D.N.Y.1978) ("The powers of an arbitrator are defined by agreement of the parties: the question they submit both establishes and limits the arbitrator's jurisdiction.")). Consequently, "[a]n arbitration award purporting to resolve questions beyond that jurisdictional boundary is not valid. For a court to find that an arbitrator has exceeded his or her delegated authority, the court must determine that 'the arbitrator's award covers areas not contemplated by the submission agreement.' " *Intermountain Power*, 961 P.2d at 323 (quoting *Buzas Baseball*, 925 P.2d at 949).

¶ 11 Further, an arbitration agreement must be in writing to be enforceable under the Utah Arbitration Act. *See Jenkins v. Percival*, 962 P.2d 796, 800 (Utah 1998) (citing Utah Code Ann. § 78–31a–3 (1996)). Nevertheless, we disagree with Pacific's position that only written agreements can modify an arbitration agreement and, thus, modify an arbitrator's jurisdiction. Standard principles of contract construction allow parties to mutually agree to modify a written contract by their conduct or oral agreement. *See Pasker, Gould, Ames & Weaver, Inc. v.*

*Morse*, 887 P.2d 872, 877 (Utah Ct.App.1994). Because arbitration agreements are construed according to ordinary contract principles, we conclude an arbitration agreement may be modified by the parties' conduct. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts."); *see also Leahy v. Guaranty Nat'l Ins. Co.*, 907 P.2d 697, 699 (Colo.Ct.App.1995) ("The scope of an arbitration panel's jurisdiction depends upon the issues actually submitted to it for determination in the parties' proposals for arbitration. Thus, even when an arbitration provision specifies the issues to be submitted to the arbitrators, the parties may agree to submit to arbitration other matters in dispute between them." (Citation omitted.)); *cf. Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union*, 611 F.2d 580, 584 (5th Cir.1980) ("Arbitration is a matter of contract, but the initial contract to arbitrate may be modified by the submission agreement or grievance." (Citations omitted.)).

¶ 12 In this case, despite the arbitration agreement's language limiting the arbitration's scope to Plat C issues, the arbitrator found that both parties proceeded to introduce evidence concerning Plat B. Paragraph 26 of the Final Arbitration Award states, in part: "During the course of the proceeding each of the parties presented evidence on the disputes relating to Plat B. The Parties clearly submitted those issues to the Arbitrator for resolution." We accept the arbitrator's finding that the parties, by their conduct and mutual consent, submitted Plat B issues for resolution, expanding the scope of the arbitrator's jurisdiction. *See Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir.1994) ("If the parties go beyond their promise to arbitrate and actually submit an issue to the arbitrator, we look both to the contract *and* to the scope of the submissions to the arbitrator to determine the arbitrator's authority."); *cf. Colman v. Colman*, 743 P.2d 782, 785 (Utah Ct.App.1987) ("If

[the record shows that] a theory of recovery is fully tried by the parties, the court may base its decision on that theory and deem the pleadings amended, even if the theory was not originally pleaded or set forth in the pleadings.").

¶ 13 Moreover, we believe Pacific is estopped from crying foul when it was the party that initially introduced Plat B evidence into the proceedings. Although Pacific contends it introduced this evidence only to "establish a course of dealing and expectation between the parties," the arbitrator found that the issues involving Plat B were not settled. The Final Arbitration Award states:

Pacific's contention that the Arbitrator lacked jurisdiction to hear and determine issues as to Plat B is rejected. Pacific is correct in stating that the arbitration agreement signed on or about June 9, 1997, represented that the issues relating to Plat B had been resolved [and] that the remaining issues to be resolved at the arbitration related to Plat C. In actuality, the parties had not in fact reached an agreement on the Plat B issues. Pacific's assertion in its Motion for Reconsideration that the issues on Plat B had been resolved and were not to be part of the arbitration is not supported by the evidence and material provided to the Arbitrator during the course of the Arbitration. In fact, Pacific submitted its Pre–Arbitration Statement to the Arbitrator dated August 24, 1997, which included as the first document in Exhibit "C" a document entitled "Pacific's Development's Amended Responses to Claims Concerning Plat B."

Given the degree of deference given to an arbitrator's award and in light of the circumstances surrounding this arbitration, we see no basis to disturb that finding. We there-fore conclude the trial court did not err in confirming the arbitrator's award.

¶ 14 Next, we reject Pacific's contention that the arbitrator exceeded the scope of his authority by manifestly disregarding the law.[3] "Manifest disregard of the law" is a judicially created doctrine based on the statutory prohibition against an arbitrator exceeding his or her jurisdiction. *Buzas Baseball*, 925 P.2d at 951. The doctrine allows a reviewing court to vacate an arbitrator's award if it determines the arbitrator manifestly disregarded applicable law. *See id.* ("If arbitrators manifestly disregard the law in making their award, they can be said to have exceeded their authority.").

¶ 15 Pacific argues the manifest disregard doctrine is satisfied because the arbitrator in this case knew about the good faith and fair dealing duty implied in all contracts, but ignored that legal doctrine when he ruled that the problem between the parties was inherent in the unit price contract. Pacific further argues that by essentially requiring Pacific to have an on-site engineer, the arbitrator relieved Orton of its inherent duty to act in good faith and implied a new term into the contract.[4]

¶ 16 We believe, however, that Pacific's manifest disregard argument simply amounts to a "manifest disagreement" with the arbitrator's findings and final award. The arbitrator specifically recognized the implied duty of good faith and fair dealing, but concluded that Pacific had not met its burden of proving Orton wasted material. Without a factual basis for Pacific's allegation, the arbitrator found no support for Pacific's argument that Orton had breached its implied duty of good faith. Thus, we conclude the arbitrator did not manifestly disregard the law.

3. Because we agree that Pacific failed to show the arbitrator manifestly disregarded the law, we need not decide whether that doctrine operates in Utah to overturn or modify an arbitration award. *See Buzas Baseball*, 925 P.2d at 951 n. 8 (analyzing manifest disregard of law but reserving issue of whether doctrine applies in Utah). We conclude only that Pacific would not be able to satisfy its burden if the doctrine were, in fact, recognized in this jurisdiction.

4. Orton rebuts this argument by citing the original agreement between the parties. That agreement, concerning Plat C, stated that "Quantities [are] subject to on-site measuring and delivery invoices and/or trucking slips, after installation." The arbitrator noted this language in the Final Arbitration Award.

¶ 17 Finally, we address Orton's request for attorney fees incurred on appeal. Orton prevailed below and received an award of attorney fees pursuant to section 78–31a–16 of the Utah Code.[5] Accordingly, we award Orton its reasonable attorney fees incurred in this appeal, the amount to be determined by the trial court on remand. *See Buzas Baseball,* 925 P.2d at 953–54 (holding award of attorney fees on appeal to correct errors of trial court was "incident to" appellee's motion to vacate or modify arbitration award); *see also Valcarce v. Fitzgerald,* 961 P.2d 305, 319 (Utah 1998) (citing *Salmon v. Davis County,* 916 P.2d 890, 895 (Utah 1996); *Social Servs. v. Adams,* 806 P.2d 1193, 1197 (Utah Ct.App.1991)).

## CONCLUSION

¶ 18 An agreement to arbitrate must be in writing; however, under standard principles of contract construction, parties may modify an arbitration agreement by mutual consent. According to the arbitrator, the parties in this case did so by introducing evidence relating to Plat B during the arbitration proceedings. Consequently, by submitting Plat·

B issues to the arbitrator, the parties expanded the scope of his jurisdiction.

¶ 19 Furthermore, the arbitrator did not exceed the scope of his jurisdiction by manifestly disregarding the law. Pacific failed to satisfy its burden to prove its allegation that Orton wasted material. Thus, the arbitrator had no factual basis to rule that the implied duty of good faith had or had not been breached.

¶ 20 Based on the foregoing, we affirm the trial court's decision confirming the arbitrator's final award. We also award Orton reasonable attorney fees incurred on appeal and remand for a determination of those fees.

¶ 21 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and RUSSELL W. BENCH, Judge.

---

5. Section 16 allows a trial court to award reasonable attorney fees and costs "incurred incident to any motion authorized by this chapter ... unless precluded by the arbitration agreement." Utah Code Ann. § 78–31a–16 (1996 & Supp.1998).