**2022 UT 4**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

AHHMIGO, LLC,
*Appellant*,

*v.*

THE SYNERGY COMPANY OF UTAH, LLC,
*Appellee*.

No. 20200770
Heard: November 10, 2021
Filed February 3, 2022

On Direct Appeal

Third District, Salt Lake
The Honorable Kara Pettit
No. 180901505

Attorneys:

Troy L. Booher, Beth E. Kennedy, Dick J. Baldwin, David J. Jordan,
David L. Mortensen, Salt Lake City, for appellant

Jonathan O. Hafen, Rachel Lassig Wertheimer, Salt Lake City,
William D. Meyer, Boulder, CO, for appellee

JUSTICE PEARCE authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PETERSEN,
JUDGE HAGEN, and JUDGE HARRIS joined.

Having recused themselves, CHIEF JUSTICE DURRANT and
JUSTICE HIMONAS did not participate herein; Court of Appeals
JUDGE DIANA HAGEN and JUDGE RYAN M. HARRIS sat.

JUSTICE PEARCE, opinion of the Court:

### INTRODUCTION

¶1 Ahhmigo, LLC (Ahhmigo) contracted with The Synergy Company of Utah, LLC (Synergy) to purchase ingredients it planned to use to craft an energy drink. The contract required Ahhmigo to make a series of payments in advance of shipment. Ahhmigo made a

portion of these payments but ran into some product development issues and eventually repudiated the contract.

¶2 Ahhmigo sought a refund of the payments it had made to Synergy for product it had never received. In arbitration proceedings, Synergy contended that the contract permitted it to keep those payments. The arbitrator ruled in favor of Synergy. Ahhmigo moved the district court to vacate the arbitrator's ruling, claiming that the arbitrator had manifestly disregarded the law. The district court denied Ahhmigo's motion.

¶3 Ahhmigo argues that the district court erred. But Ahhmigo never presented the issue it now wants us to rule on to the district court. And our preservation rules do not permit a party to raise an issue for the first time on appeal. We thus affirm. But we take the opportunity to express some qualms about the way we have talked about what it means for an arbitrator to manifestly disregard the law in hopes of prompting a robust discussion in a later case where the issue has been properly preserved.

**BACKGROUND**

¶4 Synergy agreed to sell two blended powders in bulk (Product) to Ahhmigo that Ahhmigo planned to use to make a new energy drink. The terms of the sale were set forth in two blanket purchase orders (Initial BPOs). The Initial BPOs contained the following provision: "If, for any reason, Buyer does not take shipment of all Product ordered on the Agreement, Buyer will still be responsible for paying the entire amount of the Agreement" (the Subject Provision).

¶5 Because of product development issues, Ahhmigo failed to accept shipment of the Product as the Initial BPOs required. At Ahhmigo's request, the parties executed a new BPO. When its product development issues persisted, Ahhmigo again requested another revised BPO. Under the revised BPO (RBPO), Ahhmigo agreed to make a series of specified payments prior to shipment. Ahhmigo also agreed, once again, to the Subject Provision.

¶6 Several months later, Ahhmigo requested, and Synergy shipped, some Product. Ahhmigo also made some pre-shipment payments. But Ahhmigo was unable to develop its proposed energy drink and ultimately failed to fully pay for or request shipment of the remaining Product.

¶7 Four years later, Ahhmigo filed a Complaint and Demand for Arbitration against Synergy. Ahhmigo's complaint asserted six

causes of action: breach of contract, breach of implied duty of good faith and fair dealing, reasonable reliance, unjust enrichment, conversion, and fraud. Synergy agreed to arbitrate Ahhmigo's claims.

¶8 The arbitrator dismissed four of Ahhmigo's causes of action. The parties held a seven-day arbitration on the remaining two claims: breach of contract and breach of the implied covenant of good faith and fair dealing. Ahhmigo asserted that Synergy had breached the parties' contract by, among other things, failing to deliver the remaining Product to Ahhmigo, and by failing to refund Ahhmigo the payments it had made for Product it had never received. Ahhmigo also asserted that Synergy had breached the implied duty of good faith and fair dealing in part by "[s]eeking to impose an interpretation" of the Subject Provision that would entitle Synergy to the full purchase price. In Ahhmigo's view, this was "an unenforceable penalty/liquidated damages provision." And Ahhmigo set out to convince the arbitrator that Synergy had violated the implied covenant by persisting in that interpretation.

¶9 The arbitrator concluded that Ahhmigo had "failed to prove any damages" and ruled in favor of Synergy. The arbitrator first determined that "Ahhmigo never established that Synergy ever refused to deliver Product to Ahhmigo." To the contrary, "Ahhmigo specifically stated it no longer wanted the Product."

¶10 The arbitrator next rejected Ahhmigo's argument that the Subject Provision was an unenforceable penalty. Specifically, the arbitrator rejected Ahhmigo's argument that the Uniform Commercial Code (UCC) prevented Synergy from keeping Ahhmigo's payments and any existing resale proceeds.[1] The arbitrator reasoned that "[t]he UCC provides defaults that the parties are free to contract around." And by agreeing to the Subject Provision, Ahhmigo and Synergy had effectively "modifie[d] the terms of the UCC."[2] The arbitrator then determined that the Subject

---

[1] The arbitrator noted that "Synergy admitted it did ultimately resell the ingredients that would have gone to . . . manufacture the Product Ahhmigo ordered." However, he later concluded that "[n]o Product, as defined in the RBPO[,] was ever resold by Synergy in a public or private sale."

[2] The arbitrator reasoned that even if the parties had not modified the UCC, Synergy was nonetheless entitled to "retain[] its profit
(continued . . .)

Provision was not unreasonable, "did not constitute a penalty under the UCC," and meant that "Ahhmigo still had to pay for Product even if it didn't accept delivery."

¶11   Ahhmigo moved the district court to vacate the arbitration award. Ahhmigo argued that the arbitrator had manifestly disregarded the law when he chose not to apply controlling case law of which he was aware.[3] Specifically, Ahhmigo argued that *Madsen v. Murrey & Sons Co.*, 743 P.2d 1212 (Utah 1987) determined the remedies available to a seller when a buyer fails to take delivery of goods. In Ahhmigo's view, *Madsen* dictated that "if a buyer breaches a contract by failing to take delivery of goods, the court (or arbitrator) must calculate whether the buyer is entitled to a refund, pursuant to [the UCC]." Ahhmigo claimed that by declining to calculate whether Ahhmigo was entitled to a refund under the UCC, the arbitrator had "manifestly disregarded controlling Utah Supreme Court caselaw and allowed an almost $2 million windfall to Synergy."

¶12 The district court denied Ahhmigo's motion and confirmed the arbitration award. It concluded that the arbitrator had not manifestly disregarded the law by failing to apply *Madsen* because "*Madsen* [wa]s not a clearly governing legal principle that the Arbitrator decided to ignore or pa[id] no attention to in issuing the Arbitration Award." The district court reasoned that the arbitrator had "appreciate[d] the existence" of *Madsen* but had determined that it just did not apply to the facts of this case because unlike the parties in *Madsen*, "the parties contracted around the default damages provisions in the UCC, . . . by including [the Subject Provision]" in their agreement.

¶13 Ahhmigo appeals. It now argues that the arbitrator manifestly disregarded the law when he defied an alleged stipulation between the parties and equated the Subject Provision with a liquidated damages provision. And it argues that the district

_____

from the anticipated sale to Ahhmigo" because it was a lost volume seller.

[3] Ahhmigo contended that it had "repeatedly cited, briefed and argued that . . . *Madsen* was on point and controlling authority" both "[i]n prehearing briefing and during the hearing" before the arbitrator.

court erred when it failed to vacate the arbitration award for that reason.

## ANALYSIS

### I. WE DO NOT REACH THE QUESTION AHHMIGO PRESENTS ON APPEAL BECAUSE AHHMIGO DID NOT RAISE IT IN THE DISTRICT COURT

¶14   Ahhmigo asks us to reverse the district court and vacate the arbitration award. Ahhmigo argues that the arbitrator manifestly disregarded the law when he failed to credit an alleged stipulation between the parties that the Subject Provision was not a liquidated damages provision. Ahhmigo argues that the arbitrator's approach created space for the arbitrator to avoid calculating Synergy's actual damages under the UCC formula we applied in *Madsen v. Murrey & Sons Co.*, 743 P.2d 1212 (Utah 1987), and instead "allow[ed] Synergy to keep all of Ahhmigo's payments as damages for Ahhmigo's breach, even if Synergy chose to resell the Product Ahhmigo paid for."

¶15   Synergy argues that Ahhmigo did not preserve the issue it now raises on appeal—that is, whether the arbitrator manifestly disregarded the law when he ignored a supposed stipulation of the parties.

¶16   "[A]n appellant must properly preserve an issue in the district court before it will be reviewed on appeal." *O'Dea v. Olea*, 2009 UT 46, ¶ 15, 217 P.3d 704. "An issue is preserved for appeal when it has been 'presented to the district court in such a way that the court has an opportunity to rule on [it].'" *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (quoting *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702). "To provide the court with this opportunity, 'the issue must be specifically raised . . ., and must be supported by evidence and relevant legal authority.'" *State in Int. of D.B.*, 2012 UT 65, ¶ 17, 289 P.3d 459 (quoting *Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839). When a party "ha[s] failed to preserve an issue in the [district] court, but seeks to raise it on appeal[,] . . . the party must argue an exception to preservation."[4] *State v. Johnson*, 2017 UT 76, ¶ 17, 416 P.3d 443.

---

[4] "This court has recognized three distinct exceptions to preservation: plain error, ineffective assistance of counsel, and

(continued . . .)

¶17 Ahhmigo does not argue an exception to preservation. Ahhmigo instead argues that it "preserved the issue by submitting . . . to the district court the issue of whether Synergy was entitled to keep both Ahhmigo's payments and the resale proceeds." According to Ahhmigo, "[t]hat issue includes [its] argument about liquidated damages because Utah law limits damages by excluding proceeds from resale, unless a liquidated damages provision provides otherwise."

¶18 Ahhmigo's effort to evade our preservation rule by "broadly defining the issue" it raised in the district court is unavailing. *See Patterson*, 2011 UT 68, ¶ 11 (internal quotation marks omitted). "[W]e view issues narrowly." *Johnson*, 2017 UT 76, ¶ 14 n.2 (emphasis omitted). And we recognize that an appellant raises a new issue when the appellant raises a legal theory "entirely distinct" from the legal theory the appellant raised to the district court. *See id.*

¶19 In the district court, Ahhmigo's legal theory focused on whether the arbitrator manifestly disregarded the law when he failed to apply the damages framework we used in *Madsen*, 743 P.2d at 1215–17.[5] In its motion to vacate, Ahhmigo argued that:

> [T]he Arbitrator was obligated to apply well-established and controlling Utah authority. Instead, he ignored the Supreme Court decision in *Madsen* . . . . Given this disregard for controlling authority, the Court should vacate the Arbitration Decision and remand for a new arbitration proceeding consistent with the decision in *Madsen*.

---

exceptional circumstances." *State v. Johnson*, 2017 UT 76, ¶ 19, 416 P.3d 443.

[5] This was also the issue Ahhmigo raised in its retention letter. There, Ahhmigo, in an effort to convince this court to not pour this matter over to the court of appeals, stated that "[t]he issue on appeal concerns whether the arbitrator manifestly disregarded the controlling law when it failed to calculate Synergy's damages and instead awarded a double recovery." Ahhmigo also confirmed this issue as the issue it raised to the district court, representing that in its motion to vacate, "[it] argued that the arbitrator manifestly disregarded controlling law when it failed to calculate Synergy's damages under the UCC and this court's precedent."

But the legal theory Ahhmigo now raises on appeal is, in Ahhmigo's words, "whether the arbitrator manifestly disregarded the law when he chose to ignore the parties' stipulation that the contract did not contain a liquidated damages provision."

¶20 This issue—whether an arbitrator manifestly disregards the law when he acts in violation of an alleged stipulation of the parties—presents an "entirely new legal theor[y]" from the one Ahhmigo placed before the district court. *See Johnson*, 2017 UT 76, ¶ 14 n.2. Because the district court was not asked to rule on that theory, our preservation rules prevent us from reaching it.

¶21 Ahhmigo argues that it "expressly raised the liquidated damages point" in its motion to vacate. There, Ahhmigo made two incidental references to an alleged agreement between the parties. Ahhmigo stated that "[u]nless justified as liquidated damages (which the parties and the Arbitrator agreed were not involved here), any damages beyond Synergy's actual losses would constitute an unenforceable penalty." Ahhmigo also stated, in a footnote, that "the Arbitrator correctly concluded that the instant matter did not involve liquidated damages, noting that 'both Parties assert that this is not a liquidated damages case.'"

¶22 Ahhmigo misses the point of our preservation rule. "A party may not preserve an issue by 'merely mentioning' it." *In re Guardianship of A.T.I.G.*, 2012 UT 88, ¶ 21, 293 P.3d 276 (quoting *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366). Rather, "[t]he party must put forth enough evidence that 'the issue [is] [specifically and] sufficiently raised to a level of consciousness before the [district] court.'" *Salt Lake City v. Josephson*, 2019 UT 6, ¶ 12, 435 P.3d 255 (second alteration in original) (quoting *State v. Sanchez*, 2018 UT 31, ¶ 30, 422 P.3d 866). At best, Ahhmigo briefly mentioned the alleged agreement between the parties to the district court. This, as our preservation rule makes clear, is not enough.

¶23 We also add that our preservation rule serves as the means to two ends. *See Patterson*, 2011 UT 68, ¶ 15. The first of these ends— judicial economy—"is most directly frustrated when an appellant asserts unpreserved claims that require factual predicates."[6] *Id.* "For this reason, the preservation rule should be more strictly applied when the asserted new issue or theory 'depends on controverted

---

[6] Fairness is the other goal underlying our preservation rule. *See Patterson*, 2011 UT 68, ¶ 15.

factual questions whose relevance thereto was not made to appear at [the district court].'" *Id.* (quoting *James v. Preston*, 746 P.2d 799, 801 (Utah Ct. App. 1987)). The issue Ahhmigo presents on appeal depends on a controverted factual question: whether the parties stipulated or otherwise agreed that the Subject Provision would not be treated as a liquidated damages provision. Indeed, Synergy insists that "no such stipulation occurred."[7] Ahhmigo never asked the district court to resolve that question, and our preservation rule counsels against us taking it on in the first instance. We thus affirm the district court's ruling.

## II. MANIFEST DISREGARD

¶24 Although we do not reach the merits of Ahhmigo's argument, the parties' briefing suggests to us that we may, when the opportunity arises, need to address some ambiguities in our case law. And so we offer the following in hopes of prompting further discussion about the manifest disregard standard in a case where the issue has been properly preserved. We start by examining the Federal Arbitration Act (FAA), which serves as the model for the Utah Uniform Arbitration Act.

### A. The Split on the (Hall) Street

¶25 The FAA governs the federal arbitration process. *See* 9 U.S.C. §§ 1–16. "Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (alterations in original) (citation omitted). In line with this policy, the FAA specifies grounds on which a U.S. district court may, upon motion, vacate an arbitration award. 9 U.S.C. § 10(a). One such ground exists "where the arbitrator[] exceed[s] their powers." *Id.* § 10(a)(4).[8]

---

[7] We could not confirm the existence of the stipulation in the record. And while we recognize that this may be the product of the limited record an arbitration proceeding may generate, we also recognize that it may be because, as Synergy claims, no such stipulation occurred.

[8] Other grounds include:

(1) where the award was procured by corruption, fraud, or undue means;

(continued . . .)

¶26   In *Wilko v. Swan*, the United States Supreme Court seemed to add to the statutory grounds for vacatur. 346 U.S. 427 (1953), *overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989). The Court stated, albeit in dicta, that "the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation." *Id.* at 436–37 (emphasis added). After *Wilko*, each of the circuit courts eventually recognized "manifest disregard [of the law]" as either an implicit or nonstatutory ground for vacatur under the FAA. *See Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 Fed. Appx. 415, 419 (6th Cir. 2008) (listing cases).

¶27   The U.S. Supreme Court later acknowledged the "vagueness of *Wilko*'s phrasing" in *Hall Street*, 552 U.S. at 585. But the Court's explanation was not the tonic needed to cure the vagueness. The Court pontificated that,

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the [FAA] grounds [for vacatur] collectively, rather than adding to them. Or, as some courts have thought, "manifest disregard" may have been shorthand for . . . the paragraphs authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."

*Id.* And while *Hall Street* refused to read *Wilko* to allow parties to contractually expand the grounds for vacatur under the FAA, which it considered "exclusive," it ultimately declined to determine whether those grounds could be expanded judicially. *Id.* at 585–87; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010) ("We do not decide whether '"manifest disregard"' survives our decision in [*Hall Street*] as an independent ground for

---

> (2) where there was evident partiality or corruption in the arbitrators . . .;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, . . . or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior . . .; or
> (4) where the arbitrators . . . so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4).

review or as a judicial gloss on the enumerated grounds for vacatur set forth [in the FAA].").

¶28 The question *Hall Street* left unanswered created a split among jurisdictions as to whether the manifest disregard standard remains a viable ground for vacatur. Some jurisdictions have read *Hall Street* to confine the grounds for vacatur to only those specifically enumerated in the statute. *See, e.g.*, *Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 489 (8th Cir. 2010); *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010).

¶29 Others have maintained the standard's viability. Those that do generally fall into two camps. The first seems to treat the manifest disregard standard as a nonstatutory, standalone ground for vacatur. *See Coffee Beanery*, 300 Fed. Appx. at 418–19. And the second sees the standard as a judicial gloss on the court's statutorily-granted authority to vacate an arbitration award where the arbitrator has exceeded her own powers. *See Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2nd Cir. 2021); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009). But both camps seem to interpret the standard to mean, in essence, that the arbitrator appreciated but "willfully flouted" a controlling legal principle. *See, e.g.*, *Seneca Nation of Indians*, 988 F.3d at 626.

*B. Manifest Disregard in Utah*

¶30 The Utah Uniform Arbitration Act (UUAA) governs arbitrations under Utah law. *See* UTAH CODE § 78B-11-101 to -131. Like the FAA, the UUAA sets forth grounds on which a district court must, upon motion, vacate an arbitration award. *Id.* § 78B-11-124(1). And like the FAA, the UUAA permits a court to vacate an arbitration award when "an arbitrator exceed[s] the arbitrator's authority."[9] *Id.* § 78B-11-124(1)(d).

---

[9] A court may also vacate an arbitration award if:

    (a) the award was procured by corruption, fraud, or other undue means;

    (b) there was: (i) evident partiality by an arbitrator appointed as a neutral arbitrator; (ii) corruption by an arbitrator; or (iii) misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

    (c) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement,

(continued . . .)

¶31   We first acknowledged the connection federal jurisdictions had made between the statutory grounds for vacatur and the manifest disregard standard in *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941 (Utah 1996). In *Buzas Baseball*, the Trappers appealed the trial court's modification of an arbitration award. *Id.* at 946. The trial court's modification was based, in part, on its conclusion that the arbitrator had manifestly disregarded the law prohibiting double recoveries. *Id.* at 946, 951.

¶32   We prefaced our analysis by admitting that we addressed the manifest disregard standard "because it was raised by Buzas Baseball and relied upon by the trial court below." *Id.* at 951 n.8. And while we applied it to conclude that the trial court had erred in modifying the arbitration award because "nothing in the record establishe[d] that the arbitrators knew of the rule prohibiting double recovery and disregarded it," *id.* at 951, we expressly "reserve[d] the issue of whether [the manifest disregard standard] [wa]s recognized in Utah," *id.* at 951 n.8.

¶33   We next discussed the manifest disregard standard in *Pacific Development, L.C. v. Orton*, 2001 UT 36, 23 P.3d 1035. There, a developer appealed the district court's confirmation of an arbitration award. *Id.* ¶ 1. The developer alleged, in part, that the arbitrator had "manifestly disregarded the law pertaining to th[e] covenant [of good faith and fair dealing]." *Id.* ¶ 15. Before addressing each of the developer's grounds for appeal, we again acknowledged the connection between the manifest disregard standard and section 78B-11-124(1)(d) of the UUAA. *Id.* ¶ 7 n.3. And we explained that the developer's argument that the arbitrator had manifestly disregarded the law "turn[ed] on whether the arbitrator [had] exceeded his authority." *Id.* We then concluded that "the arbitrator's decision explicitly addressed the covenant of good faith and fair dealing," *id.* ¶ 15, and "[the developer]'s manifest disregard argument simply amount[ed] to a 'manifest disagreement' with the arbitrator's

_____

refused to consider evidence material to the controversy, or otherwise conduct the hearing contrary to Section 78B-11-116, . . .;

. . .

(e) there was no agreement to arbitrate, . . .;

(f) the arbitration was conducted without proper notice of the initiation of an arbitration . . . .

UTAH CODE § 78B-11-124(1)(a)–(c), (e)–(f).

findings and final award," *id.* (citing *Pac. Dev., L.C. v. Orton*, 1999 UT App 217, ¶ 16, 982 P.2d 94). And this, we said, did not entitle the developer to reversal. *Id.* ¶ 16.

¶34 The manifest disregard standard assumed its current form in *Westgate Resorts, Ltd. v. Adel*, 2016 UT 24, 378 P.3d 93. There, we explained that a district court may vacate an arbitrator's decision "if the [arbitrator] 'exceeded [their] authority,' or if [their] decision demonstrate[d] a manifest disregard of the law.'" *Id.* ¶ 10 (internal citation omitted). We further explained that while "the 'manifest disregard' doctrine derives from the 'exceeded its authority' rule, the two entail different standards of review." *Id.* The manifest disregard standard, we reasoned, "is an extremely deferential standard," *id.* ¶ 11, whereas "we s[aw] no reason to defer to the [arbitration] panel's construction of the UUAA sections that govern the panel's own powers," *id.* ¶ 11–12.

¶35 We articulated a tripartite test that a court was to employ to decide if an arbitrator had manifestly disregarded her authority:

> First, the [arbitrator]'s decision must actually be in error. Second, the error "must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." Third, the [arbitrator] must have "appreciate[d] the existence of a clearly governing legal principle but decide[d] to ignore or pay no attention to it."

*Id.* ¶ 11 (third and fourth alterations in original) (citing *Buzas Baseball*, 925 P.3d at 951). We applied that test to conclude that the arbitration panel had not manifestly disregarded the law. *Id.* ¶ 26.

¶36 But while we applied the manifest disregard standard in *Westgate*, we also "recognize[d] there may be issues with the standard's compatibility with the UUAA." *Id.* ¶ 10 n.3. We "render[ed] no decision on the matter," however, because "the parties [did] not ask[] us to abandon the standard and Westgate's challenge to the arbitration award fail[ed] even under the manifest disregard standard." *Id.*

¶37 In the interest of facilitating discussion in a later case, we note two things about the manifest disregard standard. First, we have never applied the standard to vacate an arbitration award.

¶38 Second, we have been less than clear when we have talked about the link between the manifest disregard standard and the UUAA.

¶39 In *Buzas Baseball*, for example, we spoke of the manifest disregard standard as a "judicially created doctrine *stemming from* the exceeding authority statutory ground." 925 P.2d at 951 (emphasis added). That if an arbitrator has manifestly disregarded the law, "they can be said to have exceeded their authority." *Id.*; *see also Pac. Dev.*, 2001 UT 36, ¶ 7 n.3 ("The contention that an arbitrator has manifestly disregarded the law is a judicially created doctrine derived from the statutory provision that an arbitrator's decision may be challenged if an arbitrator has exceeded his or her authority.").

¶40 But in *Westgate*, we seemed to, at the very least, weaken the connection we had described in *Buzas Baseball*. In *Westgate*, we suggested that the manifest disregard standard and section 78B-11-124(1)(d) of the UUAA were two separate grounds on which a court might vacate an arbitration award. *See* 2016 UT 24, ¶ 10. We then really muddied the waters, explaining that the manifest disregard standard "derives from" section 78B-11-124(1)(d) but that each "entail[s] different standards of review." *Id.*; *see id.* ¶ 12–13 (dubbing the manifest disregard standard "an extremely deferential standard" but "see[ing] no reason to defer to the [arbitrator's] interpretation of th[e] statutes" that govern the arbitrator's own authority). Under our case law, then, we cannot say whether the manifest disregard standard operates as only a gloss on section 78B-11-124(1)(d) of the UUAA, or whether it is a standalone ground on which a court may vacate an arbitration award. And if it is the latter, we have yet to come across any justification for our decision to add something to the statute that the Legislature did not. *See, e.g.*, *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994) ("A cardinal rule of statutory construction is that courts are not to infer substantive terms into the text that are not already there. Rather, the interpretation must be based on the language used, and the court has no power to rewrite the statute to conform to an intention not expressed.").

¶41 The standard's murky origins lead us to wonder if perhaps manifest disregard of the law is better thought of as a way of sussing out whether the arbitrator exceeded her authority in a manner that deprived the parties of the benefit of their bargain.

¶42 "Arbitration is a matter of contract law." *Ellsworth v. Am. Arb. Ass'n*, 2006 UT 77, ¶ 14, 148 P.3d 983; *see also* UTAH CODE § 78B-11-108(1) (instructing a court to order arbitration if it finds that an enforceable agreement to arbitrate exists). "The parties to the arbitration determine the scope and questions to be resolved during the proceedings." *Buckner v. Kennard*, 2004 UT 78, ¶ 18, 99 P.3d 842.

And precisely because arbitration is a bargained-for remedy, an arbitrator cannot (manifestly) disregard the boundaries the parties have set for her. To the contrary, "arbitration contracts are to be enforced according to their terms, and . . . in the manner to which the parties have agreed." *Id.*

¶43    Fittingly, each of the grounds for vacatur the UUAA provides seems designed to ensure that the parties receive the arbitration they contracted for. For example, a district court can vacate an award if the arbitrator or the arbitration proceeding is corrupt, fraudulent, impartial, or otherwise unfairly prejudicial. *See* UTAH CODE § 78B-11-124(1)(a)–(f). These grounds all protect against something interfering with a party receiving the neutral arbitration they agreed to in the contract. *See Util. Trailer Sales of Salt Lake, Inc. v. Fake*, 740 P.2d 1327, 1329 (Utah 1987) ("As a general rule, awards will not be disturbed on account of irregularities or informalities, or because the court does not agree with the award, so long as the proceeding has been fair and honest and the substantial rights of the parties have been respected.").

¶44    In this context, the manifest disregard standard might be better viewed as a tool to inquire whether the arbitrator deprived the parties of their bargained-for arbitration by disregarding the law that the parties agreed would apply. That is, an arbitrator might manifestly disregard the law if the parties' contract calls for Utah law, but the arbitrator prefers Colorado law and applies that instead. In that case, the parties did not get what they expected to get when they contracted—the application of Utah law to their dispute.

¶45    At the very least, even our limited application of the manifest disregard standard causes us to view with suspicion a standard that permits a party to ask a district court to vacate an award based upon what is, in essence, an argument that the arbitrator misapplied the law dressed up as an argument that the arbitrator disregarded the law.

¶46    When a party voluntarily agrees to arbitrate, she agrees to forego the protections of a substantive judicial review of the merits of the arbitration decision. A party should not be able to participate in arbitration and then subject the resulting arbitration award to the review it rebuffed in the first place. After all, arbitration is, "[a]t its core, . . . supposed to be an alternative to litigation in a court of law, not a prelude to it." UNIF. ARB. ACT § 23 cmt. B, 1 (UNIF. L. COMM'N 2000).

14

## CONCLUSION

¶47   Ahhmigo asks us to reverse the district court's denial of its motion to vacate because it claims that the arbitrator manifestly disregarded the law when he failed to honor a stipulation the parties had purportedly struck. But Ahhmigo did not present this issue to the district court, or, at the very least, did not present it to the district court in a way that would have alerted the district court that it was being asked to consider it. The issue is therefore unpreserved. We affirm the district court.

————————