*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 23**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WITTINGHAM, LLC, THE MUIR SECOND FAMILY LIMITED
PARTNERSHIP, and DOROTHY JEANNE MUIR,
*Appellees and Cross-appellants,*

*v.*

TNE LIMITED PARTNERSHIP, BRUCE J. MALCOLM, and
MAUREEN H. MALCOLM,
*Appellants and Cross-appellees.*

No. 20210677
Heard January 11, 2023
Filed July 18, 2024

On Direct Appeal

Second District, Davis County
The Honorable Michael D. DiReda
The Honorable Robert J. Dale
No. 090700547

Attorneys:

James K. Tracy, Joshua L. Lee, Salt Lake City, for appellees and
cross-appellants

Trevor J. Lee, Park City, for appellants and cross-appellees

JUSTICE POHLMAN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE HAGEN joined.

JUSTICE POHLMAN, opinion of the Court:

## INTRODUCTION

¶1    This is the fourth appeal in a case that has endured fifteen years of litigation. At its core, the case is about a 2009 loan transaction between TNE Limited Partnership (TNE) and the Muir

Second Family Limited Partnership (the Muir Partnership or the Partnership) at a time when the Partnership was dissolved. The Partnership, along with Dorothy Jeanne Muir and Wittingham, LLC (collectively, plaintiffs), sued TNE and related parties to void the transaction.[1] After a seven-day bench trial, the district court granted plaintiffs' requested relief. As the prevailing parties, plaintiffs requested attorney fees under the reciprocal fees statute, but the court denied the request.

¶2　Both sides appealed. Among other things, TNE contended that the transaction was voidable, not void, and plaintiffs asserted that the district court erred in denying their fees request. After two appeals that failed on jurisdictional defects, we reached the merits of several issues in *Wittingham, LLC v. TNE Ltd. Partnership* (*Wittingham III*), where we agreed with TNE that the transaction was merely voidable. 2020 UT 49, ¶¶ 80–82, 469 P.3d 1035. We reversed the district court's determination that the transaction was void and remanded the case for further proceedings on whether the transaction bound the dissolved Muir Partnership and whether TNE was entitled to legal or equitable remedies. *Id.* ¶¶ 40–41. We further instructed the district court to reconsider the attorney fees issue if plaintiffs renewed it on remand. *Id.* ¶ 82.

¶3　Back in the district court, both parties contended that they were entitled to judgment on the trial record. TNE argued theories of why the transaction must be enforced, which plaintiffs challenged, and plaintiffs renewed their attorney fees request. The court ultimately concluded that plaintiffs could void the transaction, but it again denied their fees request. Before the court's ruling was final, TNE asked the court to reevaluate its decision in light of new authority, but the court concluded that its decision was correct and entered judgment against TNE.

¶4　Both sides again appeal. TNE primarily challenges the district court's rejection of its claim that the Muir Partnership is bound by the transaction under a theory of apparent authority. TNE also identifies several reasons why it claims the Partnership should not be allowed to void the transaction. We reject TNE's

---

[1] In their complaint, plaintiffs named many defendants related to the TNE transaction, but only three—TNE, Bruce Malcolm, and Maureen Malcolm—are parties to this appeal. As the parties have done in their briefing, we refer to these appellants and cross-appellees collectively as TNE.

claims either because TNE has not shown reversible error or because the issues are unpreserved. We also reject plaintiffs' renewed challenge to the district court's denial of their claim for attorney fees because the plain language of the trust deed on which plaintiffs' claim depends does not allow fees in this case.

## BACKGROUND[2]

¶5    The Muir Partnership was a Utah limited partnership registered in January 1994 and administratively dissolved in May 2007. William Nicholas Muir (Nick) was the general partner, and his sister, Dorothy Jeanne Muir (Jeanne), and other family members were limited partners.[3] The Partnership owned two apartment buildings in Bountiful, Utah (the apartments).

¶6    In 2009, Nick secured a $450,000 loan to renovate the apartments into rentable condition, pledging the apartments as collateral. Within only a few weeks, Nick sought to refinance the loan and to again pledge the apartments as collateral. TNE learned of the lending opportunity and expressed interest. TNE soon became aware that there was "a partnership involved," that Nick was the general partner, and that Nick's sister, Jeanne, held an interest. And TNE learned from the apartment manager that Nick had fallen from the roof of the apartments a few years back, had suffered a head injury, and had been in a coma for four months. The manager expressed his view that Nick was "incompetent," and TNE questioned Nick's "authority to transact business" for the Partnership.

¶7    Around this same time, Nick discovered that the Partnership was administratively dissolved because its renewal paperwork had not been submitted. Nick was told that he "would have to re-file the company" under a "new name." He then registered a new entity, "Muir Second Family Limited Partnership," differing in name by omitting the word "The."

¶8    Several title insurance companies considered insuring the transaction for TNE, but some expressed concern about the status

---

[2] "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the trial court's findings." *Utah State Tax Comm'n v. See's Candies, Inc.*, 2018 UT 57, ¶ 5 n.2, 435 P.3d 147 (cleaned up).

[3] Because Jeanne and Nick share the same last name, we follow the parties' lead and refer to them by their first names.

of the Partnership and Nick's authority to close the transaction. Eventually, TNE secured insurance and closed the deal. In connection with the closing, the parties signed a trust deed and promissory note (together, the TNE transaction), in which Nick pledged the apartments as collateral for a $435,000 loan. Nick signed the TNE trust deed and promissory note on behalf of the Partnership.

*The Litigation*

¶9    Jeanne first learned about the TNE transaction after it was complete. When she discovered the TNE trust deed, she filed suit, both individually and on behalf of the Muir Partnership. Shortly thereafter, Nick transferred his interest in the Partnership to Jeanne, and, through a series of transactions, title to the apartments was eventually transferred to Wittingham, LLC, a company Jeanne managed. Wittingham then joined Jeanne and the Muir Partnership as a plaintiff in the litigation.

¶10  In the complaint, the Muir Partnership and Wittingham sought a judicial declaration that all actions taken by the Partnership after its administrative dissolution, including the TNE transaction, "were not for the purpose(s) of winding up the Partnership" and were "*void ab initio.*" Alternatively, they sought a declaration that the TNE transaction "is voidable and should be set aside" because Nick lacked the mental capacity to transact with TNE. Jeanne asserted claims of her own and claims with the Partnership, but she was not a party to these declaratory judgment claims.

¶11  TNE counterclaimed, seeking a declaration that the TNE trust deed "is valid and enforceable." Later, in its trial briefing, TNE asserted in the alternative that the TNE trust deed was merely voidable, not void. TNE also responded to plaintiffs' argument regarding Nick's competency, contending that Nick was competent when he executed the TNE transaction. But TNE argued that if the court disagreed about Nick's competency, it should conclude either that (1) the Muir Partnership must still pay restitution for the benefit it received, or (2) the Partnership ratified the TNE transaction by retaining the benefit.

¶12  After a seven-day bench trial, the district court rejected plaintiffs' argument that Nick was incompetent but concluded that the TNE transaction was an unenforceable transaction that could not bind the Muir Partnership. Specifically, the court determined that the Partnership had been dissolved before the transaction

occurred and that the transaction was not a "winding up" activity under the General and Limited Liability Partnerships Act (the Partnerships Act), Utah Code sections 48-1-.5 to -48 (2009).[4] *See* UTAH CODE § 48-1-32(1)(a) (2009) (providing that, with certain exceptions, "a partner can bind the partnership" after dissolution "[b]y any act appropriate for winding up partnership affairs"). And although there is a presumption under the law that the defective transaction was voidable (rather than void), *see Wittingham III*, 2020 UT 49, ¶ 25, 469 P.3d 1035, the district court concluded that the presumption had been rebutted and that the TNE transaction was "void . . . and not merely voidable."

¶13 Although plaintiffs prevailed at trial, the district court denied their request for attorney fees based on paragraph 4 of the trust deed. Paragraph 4 provides that, to protect the security of the trust deed, the Muir Partnership agrees

> [t]o appear in and defend any action or proceeding purporting to affect the [apartments], the title to said [apartments], or the rights or powers of [TNE[5]]; and should [TNE] elect to also appear in or defend any such action or proceeding, to pay all costs and expenses, including . . . attorney's fees in a reasonable sum incurred by [TNE].

¶14 Invoking Utah's reciprocal fees statute, *see* UTAH CODE § 78B-5-826, plaintiffs argued that because TNE would have been able to recover fees under paragraph 4 had it prevailed in the litigation, plaintiffs (as the prevailing parties) were entitled to recover their fees from TNE. The district court disagreed. It concluded that, based on the plain language, paragraph 4 "[did] not apply to plaintiffs' declaratory judgment action to invalidate the trust deed."

---

[4] "Although the [Partnerships] Act has since been repealed and replaced, the 2009 version of the Act was in effect at all relevant times during this case. We therefore consider the language of the 2009 version of the Act." *Wittingham III*, 2020 UT 49, ¶ 27 n.33, 469 P.3d 1035.

[5] Paragraph 4 refers to the title company along with TNE, but because the title company's interests under this provision are not at issue in this appeal, we refer only to TNE.

*The Appeal (Wittingham III)*

¶15   On appeal, TNE asked us to review "whether a contract entered into by a dissolved partnership is void or merely voidable." *Wittingham III*, 2020 UT 49, ¶ 1. We agreed with TNE that the TNE transaction was voidable, not void, and that the district court erred in ruling otherwise. *Id.* ¶ 22.

¶16   First, we noted the "rebuttable presumption that defective contracts are voidable rather than void," *id.* ¶ 25 (citing *Ockey v. Lehmer*, 2008 UT 37, 189 P.3d 51), and that this presumption can be rebutted "only where a party has made 'a showing free from doubt that the contract is against public policy,'" *id.* ¶ 23 (quoting *Ockey*, 2008 UT 37, ¶ 21). Then, we applied *Ockey* to assess whether the TNE transaction violated public policy. *Id.* ¶¶ 26–37. We concluded the Muir Partnership failed to rebut the presumption of voidability, *id.* ¶ 37, and held the TNE transaction voidable, not void, *id.*

¶17   After making that determination, we observed that TNE might have legal remedies available under the Partnerships Act that, if applicable, would require additional factual findings by the district court. *Id.* ¶ 38. Among other things, we reasoned that the Act "mandates that the district court apply common-law agency principles such as apparent authority or partner-by-estoppel, both of which would allow the court to enforce the TNE trust deed . . . even if [Nick] did not enter into the transaction for the purpose of winding up Muir Partnership affairs." *Id.* ¶ 40. We further instructed the district court to consider, on remand, "TNE's claims for equitable relief," but only if it first determined that TNE did not have an available legal remedy. *Id.* ¶ 41.

¶18   Finally, we vacated the district court's decision denying attorney fees to plaintiffs and remanded for a new determination, if plaintiffs renewed the fees request on remand. *Id.* ¶ 79. Although plaintiffs challenged the district court's attorney fees decision on appeal, *id.* ¶ 4, we "decline[d] to address" the issue out of concern that our other rulings "may have upended" the basis for the court's decision, *id.* ¶ 79 (cleaned up).

*The Proceedings on Remand*

¶19   On remand, TNE moved for a ruling on its claim regarding the enforceability of the TNE trust deed, arguing that the facts already found by the district court entitled it to judgment on the issue of Nick's apparent authority to enter the TNE transaction. Citing section 48-1-11 of the Partnerships Act, TNE asserted that

Nick had apparent authority to enter the TNE transaction based "entirely on [his] representations."

¶20 In addition to its apparent authority argument, TNE reasserted a theory made at trial that the Muir Partnership could not void the TNE trust deed because it was the "offending party" rather than an "injured party." TNE reframed this theory as a "standing" problem, asserting that "the only 'injured party' to the TNE Trust Deed that has standing to accept or deny the TNE Trust Deed is TNE." TNE also asserted that the Partnership should be equitably "estopped from attacking the validity of the TNE Trust Deed."

¶21 In response, plaintiffs first argued that TNE could not establish apparent authority because TNE relied exclusively on Nick's statements and conduct to prove the Partnership's consent. Plaintiffs explained that without "manifestations traceable to the principal," TNE could not prevail on its claim. (Quoting *Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 22, 345 P.3d 531.) Next, regarding the question of whether the Partnership could seek to void the TNE transaction, plaintiffs argued that because the Partnership was injured by the transaction, it had the right to reject it. Finally, plaintiffs argued that TNE could not assert equitable claims or defenses because it had available legal remedies against Nick. Plaintiffs sought the entry of additional factual findings and conclusions of law consistent with its arguments.

¶22 On the issue of Nick's authority to bind the Muir Partnership to the TNE transaction, the district court determined that Nick had neither actual nor apparent authority. As to apparent authority specifically, the court rejected TNE's assertion that Nick "could act so as to give apparent authority to himself." (Citing *Burdick*, 2015 UT 8, ¶ 22.)

¶23 The court also determined that because "[p]laintiffs have been severely injured," they could reject the TNE transaction. Specifically, the court concluded that plaintiffs did "not benefit[] from the TNE Transaction in any way" and that the transaction had "encumbered the Apartments and Jeanne Muir's interest therein without providing a benefit."

¶24 After the court entered its ruling on remand awarding judgment to plaintiffs, plaintiffs renewed their request for attorney fees. The district court again denied the request, concluding that paragraph 4 of the TNE trust deed "is akin to an indemnity

provision" and does not apply to plaintiffs' action to invalidate the TNE transaction.

*TNE's Rule 60(b) Motion*

¶25  Before the district court's decision was final and after a new judge had been assigned to the case,[6] new counsel appeared for TNE and filed a rule 60(b) motion asking the court to revisit its ruling on apparent authority. *See* UTAH R. CIV. P. 60(b)(6) ("On motion and upon just terms, the court may relieve a party . . . from a judgment, order, or proceeding for . . . any other reason that justifies relief."). As TNE saw it, an intervening decision from this court—*Drew v. Pacific Life Insurance Co.*, 2021 UT 55, 496 P.3d 201— represented a departure from our apparent authority caselaw such that the district court was wrong to conclude Nick lacked apparent authority to enter the TNE transaction. And, abandoning its previous theory that the relevant manifestations came exclusively from Nick, TNE narrowed in on a new theory: that "the relevant manifestations by [the Muir Partnership] came in the form of the Partnership Agreement."

¶26  The district court denied TNE's motion. First, the court disagreed with TNE that *Drew* changed controlling law. Even still, the court found TNE's argument unpersuasive because the court had not, as TNE claimed, concluded that "direct contact with the limited partners was the only way to establish apparent authority." Rather, the court had concluded that TNE failed to show *any* manifestation by the Muir Partnership, "either direct or indirect." The court also rejected TNE's new argument that the partnership agreement itself manifested Nick's apparent authority. The court observed that the agreement, which expressly limited Nick's authority post-dissolution, did not manifest that Nick had authority to enter the TNE transaction, but it "was evidence that the opposite was true."

¶27 TNE appeals, challenging the district court's decision invalidating the TNE transaction. And on cross-appeal, plaintiffs challenge the district court's denial of attorney fees.

## ISSUES AND STANDARDS OF REVIEW

¶28  TNE challenges the district court's determination that Nick lacked apparent authority to enter the TNE transaction,

---

[6] A different judge was assigned to the case after the judge who had presided over the matter for more than eleven years retired.

describing the issue as a purely legal question about the district court's interpretation of our precedent. We review this issue for correctness. *See Keystone Ins. Agency v. Inside Ins.*, 2019 UT 20, ¶ 12, 445 P.3d 434.

¶29 Next, TNE contends that the district court erred in allowing the Muir Partnership to void the TNE transaction. This contention consists of five challenges.

¶30 TNE first contends that the court erred in determining that the Partnership was an injured party. TNE's contention appears to be a legal challenge, and so we review the court's legal conclusions for correctness. *See Wilson Supply, Inc. v. Fradan Mfg. Corp.*, 2002 UT 94, ¶¶ 10–11, 54 P.3d 1177.

¶31 TNE alternatively contends that any injury to the Partnership was caused by Nick, not TNE; that the Partnership is not entitled to equitable relief because it has an adequate legal remedy and failed to plead otherwise; that the Partnership cannot void the TNE trust deed because it ratified the transaction by accepting and spending the loan proceeds; and that, before the Partnership could void the trust deed, it would need to "return the principal" from the loan to TNE. We do not review the merits of these issues, because they are unpreserved. *See infra* ¶¶ 56–65.

¶32 On cross-appeal, plaintiffs contend that the district court erred in determining that they are not entitled to attorney fees under the TNE trust deed. "Whether a contract provides for attorney fees is a question of law that we review for correctness." *Wittingham III*, 2020 UT 49, ¶ 16, 469 P.3d 1035.

## ANALYSIS

### I. NICK'S APPARENT AUTHORITY

¶33 As this court observed in *Wittingham III*, under the Partnerships Act "there are multiple factual scenarios in which a partnership could be bound by a general partner's post-dissolution actions." 2020 UT 49, ¶ 40, 469 P.3d 1035. One of those scenarios occurs when an agent of the partnership has apparent authority to engage in certain transactions post-dissolution. *See id.* ¶ 33; *see also* UTAH CODE § 48-1-11(1) (2009) ("The partnership is bound to make good the loss . . . [w]here one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it . . . .").

9

¶34 Apparent authority is a common law agency principle with equitable roots. *See Wittingham III,* 2020 UT 49, ¶ 33; *Drew v. Pac. Life Ins. Co.*, 2021 UT 55, ¶ 89, 496 P.3d 201 (explaining that apparent authority "is founded on the idea that where one of two persons must suffer from the wrong of a third, the loss should fall on that one whose conduct created the circumstances which made the loss possible" (cleaned up)). It "can be created by a vast array and mix of facts," *Glew v. Ohio Sav. Bank*, 2007 UT 56, ¶ 19, 181 P.3d 791, but there are three elements that must be satisfied to prove its existence:

> (1) that the principal has manifested his or her consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his or her position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal.

*Drew*, 2021 UT 55, ¶ 83 (cleaned up).

¶35 In this case, the district court determined that TNE failed to satisfy the first element of this test. Following remand, TNE argued that Nick had apparent authority to execute the TNE transaction based "entirely on [Nick's] representations." Under this theory, Nick acted as both principal and agent for the Muir Partnership; so the first prong of the apparent authority test was met because Nick (as the principal) manifested consent to have himself (as the agent) execute the TNE transaction on the Partnership's behalf. But the court rejected that theory, concluding that TNE's belief in Nick's authority could not derive solely from Nick's own statements or conduct. Citing our precedent, the court explained that without "any manifestations traceable to the principal," TNE cannot establish apparent authority. (Quoting *Burdick v. Horner Townsend & Kent, Inc.*, 2015 UT 8, ¶ 22, 345 P.3d 531.) Thus, the court concluded that "[s]omeone other than [Nick] had to manifest consent to him entering into the TNE transaction on behalf of the Partnership," but "no one did."

¶36 Several months after the district court's ruling, this court issued its opinion in *Drew v. Pacific Life Insurance Co.*, 2021 UT 55.

There, in considering whether, as a matter of law, employees of an insurance producer[7] lacked apparent authority to make promises to the Drews regarding Pacific Life insurance policies, we affirmed our three-part apparent authority test. *Id.* ¶¶ 83–84. But we rebuffed any implication that the only way for a principal to manifest an agent's authority (for purposes of apparent authority) is through direct communication with the third party. *Id.* ¶ 87. We explained that apparent authority "must still be based on manifestations by the principal as to the agent's authority, and not solely the representations of the agent." *Id.* ¶ 92. But we emphasized that "those manifestations need not be made in a direct interaction between the principal and plaintiff." *Id.* We also clarified that, when we previously said in this context that "one who deals exclusively with an agent has the responsibility to ascertain that agent's authority," *id.* ¶ 88 (cleaned up), we did not mean "that the person dealing with the agent must directly contact the principal to verify the agent's authority," *id.* ¶ 92. Rather, we meant that a "plaintiff's belief in the agent's authority must be not only a subjective, actual belief, but must also be *objectively reasonable*." *Id.*

¶37 Applying these principles, we concluded that policy forms, which Pacific Life gave to the insurance producer's employees, "could constitute a manifestation of consent" by the principal to the employees' authority to solicit applications for Pacific Life policies. *Id.* ¶ 98; *see also id.* ¶ 99 (concluding that the policy forms "may constitute a manifestation of consent to [the employees'] authority to procure or solicit applications for Pacific's policies"). And we concluded that the district court erred in granting summary judgment on the ground that the forms could not, as a matter of law, manifest consent to the employees' authority. *Id.* ¶ 100.

¶38 Encouraged by *Drew*'s application of the apparent authority doctrine, TNE filed a rule 60(b) motion with the district court. In it, TNE argued that *Drew* represented a departure from this court's apparent authority precedent and proved that the district court was wrong to "hinge[] its judgment on its conclusion that TNE needed to directly contact the limited partners (i.e. the principal) to verify [Nick's] (i.e. the agent's) authority to enter in

---

[7] An insurance producer solicits and procures applications for an insurance company's products and services. *Drew*, 2021 UT 55, ¶ 5.

this specific transaction." TNE argued that "the relevant manifestations by the principal came in the form of the Partnership Agreement," and that the agreement "manifest[ed] the limited partners' consent to [Nick] entering into the TNE Transaction."[8]

¶39 The district court addressed TNE's post-judgment arguments but rejected the view that *Drew* changed controlling law. The court first rejected TNE's characterization of its previous ruling. It had not, as TNE claimed, concluded that "direct contact with the limited partners was the only way to establish apparent authority." Instead, it had concluded that TNE's argument failed because TNE had not identified *any* manifestation by the Muir Partnership. Further, the court addressed TNE's new argument that the partnership agreement manifested Nick's authority to enter the TNE transaction. The court said the agreement was not a manifestation of authority for Nick to enter the TNE transaction post-dissolution because the agreement expressly limited his post-dissolution authority.

¶40 On appeal, TNE seeks reversal of the district court's determination that the TNE transaction is unenforceable against the Muir Partnership due to Nick's lack of apparent authority. TNE argues that the court reached its determination "based solely on its misunderstanding of this Court's caselaw—that is, its view that Nick had no apparent authority because TNE never in fact contacted . . . the . . . limited partners" "to get their consent to the TNE Transaction." TNE further argues that the Partnership manifested its consent to Nick entering into transactions post-dissolution through the partnership agreement, but TNE insists that the court "largely ignored" the document "because of its understanding that there could be no apparent authority without actively contacting the limited partners." TNE's argument fails because its premises are misguided.

¶41 First, the district court did not conclude that Nick lacked apparent authority to enter the TNE transaction on the ground that TNE did not contact the limited partners to secure their consent. *See supra* ¶¶ 22, 26. Rather, the court initially rejected TNE's apparent authority argument on remand because TNE had failed to show *any*

---

[8] In its initial post-remand briefing, TNE referred generally to its receipt of the partnership agreement, but it was not until filing the rule 60(b) motion that TNE identified the agreement as the principal's manifestation of authority on which it had relied.

manifestation of the Muir Partnership's consent to Nick's authority, "either direct or indirect." When the court reached that conclusion, it did not reject TNE's claim that the partnership agreement manifested the Partnership's consent to Nick's actions. After all, TNE had yet to make that claim. *See supra* ¶ 38 n.8. Instead, the court rejected TNE's reliance on Nick's representations *alone* to establish apparent authority. And based on this court's precedent, the district court correctly rejected TNE's argument, concluding that TNE's belief in Nick's authority could not derive solely from Nick's own statements or conduct. The court's conclusion is consistent both with our earlier precedent and with *Drew. See Burdick*, 2015 UT 8, ¶ 22 ("A belief that results solely from the statements or other conduct of the agent, unsupported by any manifestations traceable to the principal, does not create apparent authority . . . ." (cleaned up)); *Drew*, 2021 UT 55, ¶ 92 (noting that, for apparent authority to exist, there must be "manifestations *by the principal* as to the agent's authority," not just representations by the agent (emphasis added)).

¶42 Next, TNE's argument that the district court "largely ignored" the partnership agreement as the source of the Muir Partnership's manifestation of consent is likewise misguided. TNE claims the court ignored the document because the court required TNE to "actively contact[] the limited partners" to ascertain the extent of Nick's authority. But in denying TNE's rule 60(b) motion, the court expressly rejected that claim. The court emphasized that in rejecting TNE's apparent authority theory, it did not conclude that there must have been a direct interaction between TNE and the limited partners. The court explained that, instead, it rejected TNE's theory because TNE had identified "*no* manifestations by the principal, either direct or indirect." TNE has not shown error in the court's assertion based on the arguments TNE made to the court on remand.

¶43 Finally, to the extent TNE ultimately relied—in its rule 60(b) motion—on the partnership agreement as the source of the Muir Partnership's manifestation of consent, it has not shown that the court erred in rejecting the agreement as the source of Nick's apparently authority. The court did not, as TNE claims, ignore the agreement; the court reviewed the agreement and determined that, under the agreement's terms, Nick's authority upon dissolution of the Partnership was expressly limited.

¶44 On appeal, TNE does not acknowledge, much less address, the court's rationale. Instead, in an attempt to persuade us that the district court erred, TNE points only to the court's rulings that predated TNE's rule 60(b) motion where TNE first posited its theory that the partnership agreement was a manifestation of consent. This is problematic. It is TNE's burden to demonstrate that the district court committed a reversible error in resolving the question presented to it for its determination. TNE cannot meet that burden without addressing the court's decision on its own terms.[9] *See, e.g.*, *Living Rivers v. Exec. Dir. of the Utah Dep't of Env't Quality*, 2017 UT 64, ¶¶ 41–43, 50–51, 417 P.3d 57 (explaining that an appellant's burden requires a timely explanation of why the lower tribunal was wrong); *Bad Ass Coffee Co. of Haw. v. Royal Aloha Int'l LLC*, 2020 UT App 122, ¶ 48, 473 P.3d 624 (stating that an appellant "cannot persuade us that reversal is appropriate without acknowledging the district court's decision and dealing with its reasoning").[10]

## II. THE MUIR PARTNERSHIP'S ABILITY TO VOID THE TNE TRANSACTION

¶45 Raising five separate issues, TNE contends that the district court erred in allowing the Muir Partnership to void the TNE transaction. The Partnership responds that TNE has failed to preserve these issues and that they fail on their merits. Because the district court addressed the first of these issues, we address that issue on its merits. But because TNE has not shown that the

---

[9] It is also not enough that TNE tried to address this issue in its reply brief, after plaintiffs noted that TNE failed to challenge the district court's determination on this point. A reply brief "is not a license to gap-fill missing arguments. . . . The timely presentation of arguments is essential to providing an opposing party with a fair opportunity to respond." *Monticello Wind Farm, LLC v. Pub. Serv. Comm'n of Utah*, 2019 UT 43, ¶ 80, 449 P.3d 128.

[10] TNE also challenges the district court's denial of its partnership by estoppel theory. But TNE concedes the district court's "estoppel conclusion should be reversed for the same reasons as its apparent authority conclusion," and TNE admitted at oral argument that its apparent authority argument and its partnership by estoppel argument rise and fall together. Accordingly, we reject TNE's partnership by estoppel challenge for the same reasons we reject its apparent authority challenge.

remaining issues are preserved, we largely reject them on that basis.

### A. The Muir Partnership Is an Injured Party

¶46  In its post-remand briefing, TNE sought judgment in its favor, asserting that it was "the *only* party that has the option of enforcing the TNE Trust Deed." Citing our decision in *Ockey v. Lehmer*, TNE argued that it was the "only 'injured party'" to the TNE transaction and thus the only one with "standing to accept or deny it." *See* 2008 UT 37, ¶ 18, 189 P.3d 51 ("[A] contract or deed that is voidable may be ratified at the election of the injured party."); *see also id.* (stating that "only the injured party" can ask the court to set aside a voidable deed). Addressing TNE's assertion, the district court found that "Plaintiffs" were "injured by the TNE transaction" because the TNE trust deed "encumbered the Apartments and Jeanne Muir's interest therein without providing a benefit." Thus, the court concluded that, as injured parties under *Ockey*, plaintiffs could seek to invalidate the TNE transaction.

¶47  TNE contends that the district court was wrong to declare the transaction unenforceable at the Muir Partnership's request, again claiming that it is the only party with the ability to avoid or enforce the transaction. TNE's contention on appeal is broken down into two related but separate issues. First, TNE insists that the court "improperly relied on injury" to limited partner Jeanne in finding that the Partnership was an injured party under *Ockey*. Second, TNE contends that the Partnership could not invalidate the TNE transaction because Nick, not the transaction, caused the Partnership's injury.

¶48  As to TNE's first point—that the district court was wrong to rely on Jeanne's injury—TNE preserved the issue by arguing that it alone could avoid or enforce the TNE transaction. But TNE has not shown that the court committed reversible error in concluding that Jeanne, along with the Muir Partnership, was also an injured party who could challenge the TNE transaction. That is, even assuming it was wrong for the court to consider injury to Jeanne, TNE has not shown it is reasonably likely that the court would have declared the TNE transaction enforceable had Jeanne's injury not been considered. *See Child v. Gonda*, 972 P.2d 425, 431 (Utah 1998) ("[W]e will not reverse a judgment merely because there may have been error; reversal occurs only if the error is such that there is a reasonable likelihood that, in its absence, there would have been a result more favorable to the complaining party.").

¶49 The district court did not rely exclusively on Jeanne's injury to invalidate the TNE transaction. Instead, the court concluded that "Plaintiffs"—including the Muir Partnership—were injured by the TNE transaction, which "further encumbered the Apartments . . . without providing a benefit." And TNE concedes that "[t]he Partnership . . . was a party to the Transaction, and could therefore void the Transaction were it injured by it." Further, despite the court's observation about Jeanne's injury, the court ultimately declared the transaction unenforceable *against the Muir Partnership* and granted the Partnership (not Jeanne's) request to invalidate the transaction. *See supra* ¶¶ 10, 12. Thus, even if the court was wrong to observe that Jeanne was also an "injured party," that observation was ultimately irrelevant to the relief the court granted to the Muir Partnership and is not a basis for reversal. *See Child*, 972 P.2d at 431.

¶50 On TNE's second point—that Nick caused the Muir Partnership's injury—we agree with plaintiffs that the issue is unpreserved. In general, we will review an issue on appeal only if the appellant preserves it in the district court. *See Ahhmigo, LLC v. Synergy Co. of Utah*, 2022 UT 4, ¶ 16, 506 P.3d 536. "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Id.* (cleaned up). To preserve an issue, "(1) the issue must be raised in a timely fashion, (2) the issue must be specifically raised, and (3) the challenging party must introduce supporting evidence or relevant legal authority." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (cleaned up).

¶51 Here, TNE does not contend that, post-remand, it raised the issue of whether Nick, as opposed to the TNE transaction, caused the Muir Partnership's injury. Instead, TNE argues that it raised the issue in its trial brief from 2013, where it stated that our caselaw "does not allow the Partnership to benefit from its misrepresentation by avoiding the TNE Transaction but retaining the benefit conferred by TNE." Even assuming a mention in the pre-*Wittingham III* trial brief could preserve an issue for this appeal, *see infra* ¶ 59, we fail to see how this assertion preserves the nuanced causation issue TNE now raises. TNE argues on this appeal that the Muir Partnership received everything it bargained for in the TNE transaction and that it was Nick's misuse of the $435,000 loan funds, as opposed to the transaction itself, that caused the Partnership's injury. But TNE did not raise this distinction below and, as a result, did not identify the applicable

causation standard or the basis for its assertion that the Muir Partnership received the loan funds when Nick, acting without actual or apparent authority, exercised control over them. Without more, the district court was not given the opportunity to rule on the issue TNE now raises, and thus that issue is unpreserved. *See 438 Main St.*, 2004 UT 72, ¶ 51.

¶52   TNE attempts to overcome this deficiency by arguing that we should either (1) construe this issue as an argument preserved under the issue of "whether the Partnership is a party with standing to void the Trust Deed," or (2) exercise our discretion to address an issue raised for the first time on appeal. We decline both invitations.

¶53  First, TNE's "effort to . . . broadly defin[e] the issue it raised in the district court is unavailing." *See Ahhmigo*, 2022 UT 4, ¶ 18 (cleaned up). TNE is correct that we have, at times, differentiated between new issues on the one hand and new arguments in support of preserved issues on the other. *See, e.g., Hand v. State*, 2020 UT 8, ¶ 6, 459 P.3d 1014 (differentiating between "new 'issues' (like distinct claims or legal theories) and new 'arguments' in support of preserved issues (such as the citation of new legal authority)"); *State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d 443 (stating that this court has "rejected the distinction between 'issues' and 'arguments' when determining whether . . . new arguments are actually entirely new issues" (cleaned up)). But TNE fails to recognize that "we view *issues* narrowly" when assessing preservation. *Johnson*, 2017 UT 76, ¶ 14 n.2; *see also Ahhmigo*, 2022 UT 4, ¶ 18. And although we will regularly consider "new authority or cases supporting an issue that was properly preserved," *Johnson*, 2017 UT 76, ¶ 14 n.2, we will reject as unpreserved "a legal theory entirely distinct from the legal theory the appellant raised to the district court," *Ahhmigo*, 2022 UT 4, ¶ 18 (cleaned up); *see also Hand*, 2020 UT 8, ¶ 6 (equating new issues with distinct legal theories).

¶54  TNE's assertion—that the TNE transaction did not cause the Muir Partnership's injury—involves more than a citation to new legal authority supporting its generalized assertion that the Partnership lacks standing to invalidate the TNE transaction. Instead, the assertion presents a distinct legal theory requiring its own legal authority and factual analysis, neither of which was presented to the district court. Thus, the issue is not reviewable under the umbrella of a preserved issue.

¶55 Second, TNE correctly observes that "[o]ur preservation requirement is . . . one of prudence rather than jurisdiction" and that we retain some discretion to decide "whether to entertain or reject matters that are first raised on appeal." *Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828. But "[i]n an effort to serve the policy considerations of judicial economy and fairness to the parties, to preserve the adversarial model, and to provide clear guidelines to litigants, we have limited our discretion by creating exceptions to the general preservation rule." *Johnson*, 2017 UT 76, ¶ 13. These exceptions are plain error, ineffective assistance of counsel, and exceptional circumstances. *Ahhmigo*, 2022 UT 4, ¶ 16 n.4. "When an issue is not preserved in the trial court, but a party seeks to raise it on appeal, the party must establish the applicability of one of these exceptions to persuade an appellate court to reach that issue." *Johnson*, 2017 UT 76, ¶ 19. TNE has not sought review of this or any issue under a preservation exception.

*B. TNE Did Not Preserve the Ratification Issue It Presents on Appeal*

¶56 TNE contends that the Muir Partnership is barred from voiding the TNE transaction because the Partnership ratified it by accepting and spending loan proceeds. Plaintiffs assert that this issue is unpreserved and that, in any event, it fails on its merits. TNE disagrees, arguing that the question of ratification is not a separate issue but is merely an "'*argument*' that need not be preserved in support of the *issue* of [the Muir Partnership's] standing." Alternatively, TNE argues that its ratification defense "has been repeatedly preserved," pointing to a reference to ratification in its trial brief and another in its closing argument. We are unpersuaded by either point.

¶57 We reject TNE's first assertion because TNE again construes issues too broadly for the purpose of preservation. *See supra* ¶¶ 53–54. TNE's assertion that the Muir Partnership lacked standing to void the TNE transaction did not preserve its equitable argument—that the Partnership ratified the TNE transaction and is therefore barred from disavowing it. TNE's standing challenge was based on its claim that the Partnership was not an injured party. In contrast, for the doctrine of ratification to apply in this context, TNE would have had to prove its claim that the Partnership "took and spent the proceeds" from the TNE loan and that the Partnership had "knowledge of all material facts and an intent to ratify" the TNE transaction. *See Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1098 (Utah 1988) (cleaned up). Although both of TNE's

contentions share the same goal—to bar the Partnership from voiding the TNE transaction—they are grounded in different legal theories that require the application of particular facts to unique elements. Thus, they present different issues, and the preservation of one does not preserve the other.

¶58 We likewise reject TNE's second assertion because TNE's references to ratification during the 2013 trial did not preserve the ratification issue it argues on appeal. As part of the trial, TNE invoked the concept of ratification in two specific ways. First, in its trial brief, it argued that *if* the court found Nick to be incompetent in his dealings with TNE, then the court should find that the Muir Partnership ratified the TNE transaction by retaining a benefit from it. But the district court had no occasion to reach that issue because it rejected the claim of incompetency. Having tied the argument to that specific context, TNE cannot now argue that it preserved the issue generally. Second, during closing argument, while arguing for an award of restitution, TNE suggested that the Partnership's pursuit of a judgment against a co-defendant was "a ratification of [the TNE] transaction." But TNE did not contend, as it does now, that the Partnership was barred from voiding the TNE trust deed on the basis that it ratified the TNE transaction. Rather, counsel referenced ratification in passing as an assertion supporting TNE's failed unjust enrichment claim—not as a doctrine that barred the Partnership's request for relief.

¶59 Further, even if TNE's references to ratification in 2013 presented the same issue TNE now articulates on appeal, those references would not have satisfied our preservation requirements under the circumstances of this case. Our preservation rule requires that the appellant "timely" present an issue to the district court "in such a way that the . . . court has an opportunity to rule on it." *See Park City Mun. Corp. v. Woodham*, 2024 UT 3, ¶ 20, 545 P.3d 221 (cleaned up). On remand from the appeal in *Wittingham III*, the parties framed the issues they wanted addressed. Both sides filed motions seeking judgment in their favor, and both sides filed memoranda opposing the relief the other sought. If TNE believed the Muir Partnership was barred from voiding the TNE transaction due to ratification, TNE could have identified the issue in its post-remand memoranda. It was not the district court's obligation to sift through near-decade-old trial briefs and transcripts to address each issue that, in its view, could be ripe for consideration. *See Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 47, 321 P.3d 1054 ("[A] district court is not a depository in which a party may dump

the burden of argument and research." (cleaned up)); *see also Stichting Mayflower Mountain Fonds v. United Park City Mines Co.*, 2017 UT 42, ¶ 43 n.12, 424 P.3d 72 ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam))).

*C. TNE Did Not Preserve the Issue of Adequate Legal Remedies*

¶60 TNE next contends that voiding the TNE transaction constitutes an equitable remedy and that the Muir Partnership cannot void the transaction because, according to TNE, the Partnership has an adequate remedy at law. In response to plaintiffs' argument that TNE did not preserve this issue in the district court, TNE concedes that it did not present "this specific argument . . . in this same form." Still, it insists that the challenge is preserved because it qualifies as an "argument" in support of its generalized assertion that the Partnership "lacks standing" to void the TNE transaction. Alternatively, it argues that because the challenge presents a "pure legal issue," we should relax our preservation requirements. We disagree.

¶61 This question presents a unique and independent issue regarding the availability of a particular remedy. It does not fall under the general umbrella of standing, nor does it fall within TNE's assertion that the Muir Partnership was not an "injured party" that could invalidate the TNE transaction. Further, TNE has again failed to argue an exception to preservation. *See supra* ¶ 55.

*D. TNE Did Not Preserve Its Claim for Restoration of Loan Funds*

¶62 TNE last asserts that, even if the Muir Partnership could void the TNE transaction, it would first need to return TNE to the *status quo ante*, that is, the position it was in before the TNE transaction. Plaintiffs again argue that TNE failed to preserve this issue. For many of the same reasons noted above, we agree with plaintiffs.

¶63 As it has done before, TNE argues that this issue falls under "the umbrella of the preserved issue of the Partnership's inability to void the [TNE] Trust Deed." But a comparison of the two issues demonstrates that they are not alike. The preserved issue challenges the district court's determination that the Muir Partnership was an "injured party" that could seek to invalidate the TNE transaction. *See supra* ¶¶ 46, 48. In contrast, TNE—in this final issue—seeks an order of relief "requiring the Partnership to . . . restore the funds TNE provided" as part of the TNE transaction.

These are unique issues, and thus TNE cannot introduce one into the appeal through the other.

¶64 TNE also argues, in the alternative, that this issue was "independently preserved" through a reference to restitution in a pre-trial brief and during closing argument. In both instances, much like its ratification argument, *see supra* ¶ 58, TNE's argument depended on the district court first finding that Nick was incompetent. Thus, having rejected the Muir Partnership's incompetency claim, the court had no occasion to consider the issue as it was framed.[11]

¶65 Finally, even if the district court should have spontaneously considered the issue more generally, it was not timely raised. TNE raised the issue at trial but did not renew it when the case returned to the district court after remand, more than eight years later. If TNE had wanted the issue addressed post-remand, it needed to bring it to the court's attention. *See supra* ¶ 59. This case has been pending for nearly fifteen years. It serves no one's interest to frame issues for resolution for the first time on appeal.

### III. PLAINTIFFS' ATTORNEY FEES CLAIM

¶66 Plaintiffs cross-appeal, contending that, as the prevailing party in the case, they are entitled to attorney fees under Utah's reciprocal attorney fees statute. *See* UTAH CODE § 78B-5-826.

¶67 "In Utah, attorney fees are awardable only if authorized by statute or by contract." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). Utah's reciprocal fees statute "permits a court to award attorney fees to the prevailing party in civil litigation based upon a

---

[11] In its reply brief on appeal, TNE provides an additional record citation in support of its claim that this issue is preserved. That citation is to the introduction of TNE's trial brief, in which it argued that if the Muir Partnership succeeds on either of its two main legal theories—that the TNE transaction was not a proper wind-up event or that Nick was incompetent—the Partnership must make restitution. The primary problem with the citation is that in the body of the brief, TNE again limits its discussion of restitution to the incompetency issue only. This stray reference in the introduction was insufficient to alert the district court that TNE intended to argue the issue more broadly.

contract when the contract provides attorney fees to at least one party." *Federated Cap. Corp. v. Libby*, 2016 UT 41, ¶ 28, 384 P.3d 221 (citing UTAH CODE § 78B-5-826). But "the award of attorney fees is allowed only in accordance with the terms of the contract," *R.T. Nielson Co. v. Cook*, 2002 UT 11, ¶ 17, 40 P.3d 1119, and the contract provision must be "broad enough in scope to cover fees incurred in *this* . . . action," *see Loosle v. First Fed. Sav. & Loan Ass'n of Logan*, 858 P.2d 999, 1003 (Utah 1993) (emphasis added).

¶68  Plaintiffs assert here, as they did below, that paragraph 4 of the TNE trust deed allows for an attorney fees award to the prevailing party. That paragraph provides that, to protect the security of the TNE trust deed, the Muir Partnership agrees

> [t]o appear in and defend any action or proceeding purporting to affect the [apartments], the title to said [apartments], or the rights or powers of [TNE]; and should [TNE] elect to also appear in or defend any such action or proceeding, to pay all costs and expenses, including . . . attorney's fees in a reasonable sum incurred by [TNE].

¶69 The district court rejected plaintiffs' argument that paragraph 4 would have provided a basis for an attorney fees award to TNE had it prevailed in this case. The court observed that paragraph 4 "cannot and does not apply to plaintiffs' declaratory judgment action to invalidate the trust deed" because the paragraph "does not contemplate a suit such as the one plaintiffs brought." The court explained: "This is not a case brought by someone else in which plaintiffs could have appeared and *defended* the trust deed." (Emphasis added.) Instead, it was plaintiffs who sued to invalidate the TNE transaction, and they could not "simultaneously assert" invalidity of the TNE trust deed "while also seeking to uphold the trust deed as a lien on [the apartments]." The court reasoned that, properly understood, paragraph 4 is "akin to an indemnity provision" that would apply where TNE incurred fees "to appear and defend against claims brought by a third party purporting to affect the trust deed as security against the [apartments]."

¶70 Plaintiffs contend that if paragraph 4 "ended" with the first clause, "the district court's conclusion would be correct." They agree that the first clause requires the Muir Partnership "to appear and defend in any action purporting to affect the TNE Trust Deed." But they see the second clause as "distinct" from the first and allege

that this clause provides "an award of fees," the "only condition" of which "is that TNE appear and defend '*any* action or proceeding purporting to affect the TNE Trust Deed.'"

¶71 But to arrive at their proffered interpretation, plaintiffs read language out of the second clause. The second clause provides that the Muir Partnership agrees to pay TNE's attorney fees "should [TNE] elect to also appear in or defend any *such* action or proceeding." (Emphasis added.) By including the word "such," the second clause plainly refers back to the first. And reading both clauses together, the TNE trust deed contemplates recovery of TNE's attorney fees where both TNE and the Muir Partnership "appear in and defend any action or proceeding purporting to affect the [Apartments], the title to [the Apartments], or the rights or powers of [TNE]," in order to "protect the security of the TNE Trust Deed."

¶72 This action was not one where the Muir Partnership and TNE both "appear[ed] in and defend[ed]" the security of the TNE trust deed. Indeed, we agree with the district court that the Partnership could not appear in and defend against its own lawsuit seeking to declare the trust deed invalid. Because "any such action" is not "broad enough in scope to cover fees incurred in this . . . action," *see Loosle*, 858 P.2d at 1003, paragraph 4 is not a legal hook for a fees award under the reciprocal fees statute. Thus, the district court did not err in denying plaintiffs' request for an attorney fees award.

## CONCLUSION

¶73 TNE has not shown that the district court erred in rejecting its apparent authority argument. The court correctly rejected TNE's initial argument that the Muir Partnership manifested its consent to the exercise of Nick's authority through Nick's representations alone. And while in its rule 60(b) motion, TNE proposed that the partnership agreement was the source of the Partnership's manifestation of consent, TNE has not shown that the court erred in rejecting the agreement as the source of Nick's apparent authority.

¶74 TNE also fails to establish that the district court erred in allowing the Muir Partnership to void the TNE transaction. TNE's argument that the court improperly accounted for injury to Jeanne fails because TNE has not shown it is reasonably likely that the court would have declared the transaction enforceable had it not considered Jeanne's injury. And we do not reach the remainder of

TNE's theories as to why the court erred in allowing the Partnership to void the TNE transaction, because they are unpreserved.

¶75  Finally, we affirm the district court's denial of an attorney fees award to plaintiffs because they have not established that the plain language of the TNE trust deed allows for recovery of attorney fees in this action.

———————